## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **RUBY L. GIBBONS, et al.,** | ) | **CASE NO.1:04CV2018** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **THE BAIR FOUNDATION, INC., et al** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

### CHRISTOPHER A. BOYKO, J:

This matter is before the Court on Defendant The Bair Foundation's ("Bair") Consolidated Post-Trial Motions for New Trial, Renewed Motion for Judgment and Motion to Alter/Amend Judgment (ECF Dkt#215).  For the following reasons, the Court denies Defendant's Motions.  Furthermore, the Court denies Plaintiffs' Motion to Strike (ECF Dkt. #245)

On February 8, 2006, after nearly three weeks of trial, the jury returned a verdict and judgment was entered finding Defendant liable on Plaintiff Janice Thomas' ("Thomas") claim of religious discrimination in violation of Ohio law for failing to hire her because the church she belonged to was "not Christian enough." The jury awarded her back pay of Four Thousand Three Hundred Ten Dollars and punitive damages of Forty Thousand Dollars.  The jury also found Defendant liable on Plaintiff Ruby L. Gibbons' ("Gibbons") claim of retaliation, for complaining

1

about the religious discrimination of Plaintiff Thomas, awarding Gibbons Forty Thousand

Dollars in front pay and Ninety Thousand Dollars in punitive damages.

Defendant has moved for judgment as a matter of law, new trial or remittitur on all

adverse verdicts pursuant to Federal Rules of Civil Procedure 49(b), 50 and 59.

### **Defendant's Arguments**

Defendant contends the jury made the following errors in reaching its verdict:

I.  Plaintiff Thomas

A) The jury found Thomas did not meet her burden under Title VII but found for Thomas in her religious discrimination claim under O.R.C. 4112 despite identical burdens of proof.

B) Thomas was awarded Forty Thousand Dollars in punitive damages requiring "clear and convincing" standard of proof despite the fact that: 1) there was no direct evidence of discrimination; 2) Thomas failed to meet her burden of proving, by a preponderance of the evidence, pretext; 3) the jury did not award compensatory damages for emotional distress; 4) Renay Crouse, the ultimate decision maker, never met with Thomas nor spoke with her; 5) the punitive damage award was approximately ten times the back pay awarded Thomas; and 6) the punitive damage award was excessive as the only financial information on Bair was the evidence the company lost Four Hundred Thousand Dollars in 2003.

II.  Plaintiff Gibbons:

a) The jury found Defendant did not offer a legitimate non-discriminatory reason for Gibbons termination even though the undisputed evidence demonstrated Bair placed Gibbons on a developmental plan and two corrective action plans and final assessments of foster family files for which she was responsible demonstrate there were 52 errors.

b) The jury awarded Gibbons Forty Thousand Dollars in front pay for eighteen months when the maximum permissible amount under the Court's findings totaled approximately Fourteen Thousand Dollars.

c) The jury awarded Ninety Thousand Dollars in punitive damages under Ohio law which requires clear and convincing evidence of actual malice, even though Gibbons offered no evidence the ultimate decision maker in her termination even knew she complained about Bair's refusal to hire Thomas.

2

d) The punitive damage award was excessive as the evidence showed Bair lost Four Hundred Thousand Dollars in 2003 and had a net gain of approximately Thirty-Eight Thousand Dollars in 2004.

## **Preliminary Issues**

Plaintiffs contend Defendant's Consolidated Motions were untimely, having been filed on February 23, 2006, more than the ten days after the entry of judgment on or before February 7, 2006.  As Federal Rule of Civil Procedure 50 requires renewals of motions for judgment and motions for new trial be filed within ten days of the entry of judgment, Plaintiffs contend Defendant's consolidated motions should be dismissed as untimely.  However, Defendant correctly cites to Fed. R. Civ. P. 6 which excludes Saturdays, Sundays, and legal holidays when the response date is less than eleven days.  Therefore, Defendants Consolidated Motions were timely filed.

Plaintiffs contend Defendants' Consolidated Motions exceed the page limits established in Local Rule 7.1 and should be stricken.  Defendants contend Local Rule 7.1 applies only to pre-trial motions and therefore, the applicable page limits do not apply.  However, Local Rule 7.1 does not limit its application to only pre-trial motions.  Defendants cite to Local Rule 7.1(a) which states, "all motions, unless made during a hearing or trial, must be in writing and must be made sufficiently in advance of the trial to avoid any delay in trial." Local Rule 7.1 limits all non-dispositive motions to fifteen pages in length for standard track cases.  However, as Defendants Motion is a consolidated brief containing multiple motions, this Court has the discretion to permit the page extension and will allow Defendant to exceed the page limits on the basis of judicial economy.

## **STANDARD OF REVIEW**

3

### Renewed Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50 states:

**(1)** If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
**(2)** Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

**(b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial.** If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment-- and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

**(1)** if a verdict was returned:
**(A)** allow the judgment to stand,
**(B)** order a new trial, or
**(C)** direct entry of judgment as a matter of law; or
**(2)** if no verdict was returned;
**(A)** order a new trial, or
**(B)** direct entry of judgment as a matter of law.

On review of a renewed motion for judgment as a matter of law the Court "must view the evidence in the light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences." *Phelps v. Yale Sec. Inc.,* 986 F.2d 1020, 1023 (6th Cir.), *cert. denied,* 510 U.S. 861(1993). Judgments as a matter of law should only be granted "if a complete absence of proof exists on a material issue in the action, or if no disputed issue of fact exists on which reasonable minds could differ." *LaPerriere v. Int'l Union UAW,* 348 F.3d, 127, 132 (6th Cir.2003). "Further, the Court must consider that juries are allowed to draw inferences

4

from the evidence presented and that such inferences may provide the basis for an appropriate verdict." *Swift v. Hickey*, No. C2-02-682, slip op. at *3 (S.D. Ohio May 26, 2006), citing *Karam v. Sagemark Consulting, Inc.,* 383 F.3d 421, 429 (6th Cir.2004).

**Motion for New Trial**

Federal Rule of Civil Procedure 59 states in pertinent part:

**(a) Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States.

"Generally courts have interpreted this language to mean that a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.,* the proceedings being influenced by prejudice or bias." *Holmes v. City of Massilon, Ohio,* 78 F.3d. 1041, 1045-46 (6th Cir. 1996), citing *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251 (1940). "The trial court should deny such a motion if the verdict is one that reasonably could be reached, regardless of whether the trial judge might have reached a different conclusion were he the trier of fact." *Walker v. Bain,* 257 F.3d 660, 670 (6th Cir. 2001).  On motions for new trial, the trial court may weigh the evidence. See *United States v. L.E. Cooke Co.,* 991 F.2d 336, 343 (6th Cir. 1993).

## ANALYSIS

A)      ***The jury erred in finding Defendant Janice Thomas failed to meet her burden of proving religious discrimination under Title VII but found she met her burden of proving religious discrimination under O.R.C. 4112 despite there being identical burdens of proof.***

5

Defendant Bair contends the jury returned an inconsistent verdict by finding Defendant discriminated against Plaintiff Thomas, on the basis of her religion, in violation of Ohio Revised Code section 4112, but found Plaintiff Thomas failed to meet her burden of demonstrating religious discrimination under Title VII, despite the Ohio and federal laws having identical burdens of proof. Also, Defendant contends Plaintiff Thomas failed to offer sufficient evidence of pretext because the jury found no direct evidence of religious discrimination and the evidence demonstrated the decision not to hire Plaintiff Thomas was based on her high salary demand and not for any discriminatory purpose.

Plaintiff Thomas contends Defendant did not object to the jury instructions on Thomas' federal religious discrimination claim or her state religious discrimination claim and is, therefore, precluded from arguing the two instructions should have been identical.  Plaintiff Thomas further contends because the two claims offered different instructions the jury clearly felt more comfortable with the language of the Ohio instruction as opposed to the federal instruction.  The fact that the jury found no direct evidence of religious discrimination is irrelevant to the discussion as they had sufficient indirect evidence to permit their finding of religious discrimination under Ohio law.

The touchstone of this claim is the two different instructions for Plaintiff Thomas' Title VII religious discrimination claim versus her Ohio Religious Discrimination claim.  Jury Interrogatory number 17, regarding Plaintiff's Title VII claim states:

*Did Plaintiff Thomas prove by a preponderance of the evidence that the reason for not hiring Plaintiff Thomas:*

*1. Had no basis in fact; or*
*2. Was not the actual motive for the Defendant's actions; or*
*3. Was a factor in the decision, but was insufficient to motivate the adverse*

6

> *employment decision.*

The jury determined Plaintiff had failed to prove any of the above.

Jury Interrogatory number 19, regarding Plaintiff's Ohio Religious Discrimination claim states:

> *Did Plaintiff Thomas prove by a preponderance of the evidence that her religion was a determining factor for the Defendant's decision not to hire Plaintiff Thomas?*

The jury found Plaintiff had demonstrated her religion was a determining factor and found Defendant had violated Plaintiff Thomas' right to be free from religious discrimination under Ohio law.

It is well established that Title VII and O.R.C. 4112 evidentiary standards and analysis are the same. See *Greene v. St. Elizabeth Hosp. Med. Ctr.,* No. 96-4308, 1998 WL 13410, at *5 (6th Cir. 1998) and *Neely v. Franklin Cty. Aud.,* 97 Ohio App.3d 771 (Ohio Ct. App. 1994).  Jury interrogatory No. 17 was adopted from the *McDonnell/Burdine* burden shifting analysis in the absence of Sixth Circuit civil pattern jury instructions.  Jury interrogatory No. 19 was taken from Ohio Jury Instructions.

The law of the case, federal and Ohio law, all agree Ohio and federal religious discrimination claims have the same evidentiary standards and general analysis. The jury instructions, while requiring similar analysis and evidence, focus their inquiry on two separate but distinct areas.  Ohio's jury interrogatory requires the jury examine whether Plaintiff's "religion" was the determining factor in her failure to be hired.  The federal jury interrogatory focuses on Defendant's proffered reason for failing to hire Plaintiff.   This Court must first determine whether there is a way to reconcile the jury's findings before it can hold the answers irreconcilable.  Jury answers should be reconciled if at all possible.  See *Murphy v. University of*

7

*Cincinnati, et al.,* 72 Fed. Appx. 288, 296 (6ᵗʰ Cir. 2003).

In looking at the two interrogatories, the Court holds a reasonable jury could have drawn two separate conclusions that would not be incompatible or inconsistent.  Comparing Jury Interrogatory 17 with 19, a reasonable jury could distinguish the focus of each and therefore, reach a different result.  The focus of Interrogatory 17 is the pretext of Defendant Bair, an indirect way of approaching what the Court finds was the heart of this trial - religion. Interrogatory 19, which addresses Plaintiff's Ohio Religious Discrimination claim, is "more direct," asking the jury to determine whether Plaintiff's religion was a determining factor.

It matters not whether the evidentiary standards and analysis are the same if, in fact, a reasonable jury could rationally distinguish the focus of the two claims, keeping in mind that evidence of both Plaintiff's and Defendant's religion dominated the entire case. Furthermore, in *Tooson v. Roadway Express, Inc., et al,* 47 Fed. Appx. 370, 373 (6ᵗʰ Cir. 2002), the Sixth Circuit held, that the use of "determining factor" in a jury instruction in a Title VII race discrimination case was not improper when the trial court's jury instruction informed jurors that "determining factor" meant plaintiff's race need not have been the sole factor that motivated defendant's decision to terminate plaintiff. The Sixth Circuit went on to say, "[a]lthough it would be better practice for the trial court to use the statutory term, we think that the 'motivating factor' language of the statute requires at least as much proof as the district court's specification of 'determining factor.'" *Id.*  Here, this Court used the proper instruction of "motivating factor" in its instruction to the jury on Plaintiff's Title VII claim. Defendant does not challenge the jury instruction, rather, it challenges the jury's alleged contradictory finding.  Since the plain language of the Ohio and federal instructions contain distinguishable points of reference, and the

8

Sixth Circuit in *Tooson* held that using "determining factor" instead of "motivating factor" is legally harmless when coupled with the appropriate instruction of non-exclusivity, the Court finds the jury's findings were not contradictory and do not warrant a new trial or reversal.

Nor does the jury's finding that Plaintiff failed to demonstrate direct evidence of religious discrimination mean they could not find by a preponderance of the evidence religious discrimination.  The jury had Plaintiff's Gibbons testimony that Renay Crouse, a supervisor at Bair, told her the reason Thomas was not hired was because her church was not a Christian church, coupled with the evidence that the proffered reason for not offering her the position was pretextual and the surrounding circumstances of the initial offer of employment and subsequent retraction of the offer, provided the jury a legitimate basis for its finding.  Therefore, the Court denies Defendant's Renewed Motion for Judgment as a Matter of Law and/or New Trial on Plaintiff Thomas' Religious Discrimination claim.

B)    ***The jury erred in finding evidence of religious discrimination in violation of Ohio Revised Code 4112, when the evidence demonstrated Thomas was not offered the position due to her high salary demand.***

The Court will not attempt to look into the mind of the jury however, the Court does find there was ample evidence in the record to permit the jury to infer religious discrimination; to determine the ultimate decision maker knew of Plaintiff's religion and failed to hire her because of it.  Therefore, the Court denies Defendant's Renewed Motion for Judgment as a Matter of Law and/or for New Trial as the Court cannot say the jury reached a seriously erroneous verdict against the weight of the evidence.  While the jury did determine that the alleged comment by a supervisor for defendant that Plaintiff's membership in the unity church was the reason she was not hired did not constitute direct evidence, the comment still provided indirect evidence by

9

which the jury could have concluded Plaintiff's religion was a determining factor in defendants

failure to hire her, when coupled with other evidence offered at trial. There was testimony that

Defendant did not attempt to negotiate with Plaintiff a lower starting salary in light of

Defendant's contention that Plaintiff Thomas' salary demand was too high; testimony that other

employees at Bair were not  hired because of their religious beliefs/morality; and testimony that

Bair supervisors were told of the alleged religious discrimination and failed to follow its own

policy and procedures by failing to investigate the allegation.  Therefore, the Court denies

Defendant's Motion for Judgment and denies its Motion for New Trial and/or to Alter or Amend

Judgment.

C)   ***The Jury erred in awarding Plaintiff Thomas Forty Thousand Dollars in punitive
damages because: there was no legally sufficient basis; there was no direct evidence of
religious discrimination; the award contravenes the 14th Amendment to the United
States Constitution.***

In light of prevailing Sixth Circuit law, this Court must give nonmovant the benefit of all

reasonable inferences and may only grant a Renewed Motion for Judgment as a Matter of Law

when a complete absence of proof exists. The Court must consider that juries are permitted to

draw inferences from the evidence presented.  Significantly, Defendant does not contend the

punitive damages claim under Ohio law was improper.

The Defendant contends there was lacking a sufficient legal basis for the jury's award of

punitive damages as evidence demonstrated a lack of actual malice. A jury may award punitive

damages only upon a finding of actual malice. *Calmes v. Goodyear Tire & Rubber Co.* (1991),

61 Ohio St.3d 470, 473.

In *Preston v. Murty,* 32 Ohio St. 3d 334, (1987), the Ohio Supreme Court defined malice as:

(1) "that state of mind under which a person's conduct is characterized by hatred, ill will

10

or a spirit of revenge, or

(2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."  "Furthermore, the trial judge is in the best position to determine whether an award is so excessive as to be deemed a product of passion or prejudice." *Villella v. Waikem Motors, Inc.,* (1989) 45 Ohio St. 3d 36, 40.  "Low compensatory damages and high punitive damages assessed by a jury are not in and of themselves cause to reverse the judgment or to grant a remittitur, since it is the function of the jury to assess the damages and, generally, it is not for a trial or appellate court to substitute its judgment for that of the trier of fact. A large disparity, standing alone, is insufficient to justify a court's interference with the province of the jury."*Id.*

The Court finds there is no evidence the jury's award of punitive damages was the product of passion or prejudice. There was testimony that a supervisor told an employee Plaintiff Thomas was not hired due to her religion.  That the jury found there was no direct evidence of religious discrimination on Plaintiff's Title VII claim does not preclude the jury awarding punitive damages on Plaintiff's religious discrimination under Ohio law, as the jury found Plaintiff's religion was a determining factor in Defendant's decision not to hire Plaintiff. Also, there was testimony Defendant did not hire Thomas because her church affiliation "was not Christian enough," which goes towards malice, evidencing a condescending attitude toward other churches/religions.  Nor does the Court find the punitive damage award excessive, as it presents a multiplier of slightly more than nine times the award for compensatory damages. While the U.S. Supreme Court has not established a bright line test for acceptable multipliers, it did state that multipliers of single digits were "more likely to comport with due process" and

"few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm Mutual Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 425 (2003).

Ohio permits punitive damage awards in employment discrimination claims where there is a showing of actual malice. See *Rice v. CertainTeed Corp.* (1999) 84 Ohio St.3d 417. Plaintiff points out that the jury determined Plaintiff Thomas' religion was a determining factor in the decision not to hire her. Such a determination permitted the jury to find the Defendant acted with ill will towards Plaintiff. Several employees of Defendant testified they knew it was a violation of law and Defendants own policy to discriminate based on religion. The jury heard testimony that Crouse advised Plaintiff Gibbons to make up a non-discriminatory reason for not hiring Plaintiff Thomas. Finally, evidence at trial showed supervisors at Bair were informed of the discrimination and did nothing about it. Plaintiff contends all this testimony and evidence was sufficient to support an award of punitive damages. The Court agrees with Plaintiff. Such evidence and testimony is sufficient to support an award of punitive damages and the jury did not err in concluding as such.

Pursuant to *BMW of North America, Inc. v. Gore,* 517 U.S. 559 (1986), the United States Supreme Court established three guideposts for analyzing punitive damage awards in light of the Due Process Clause of the Fourteenth Amendment's prohibition against grossly excessive or arbitrary punishments. The *Gore* Court determined courts should examine: 1) the degree of reprehensibility of defendant's conduct; 2) the disparity between the actual and potential harm suffered by plaintiff and the amount of the punitive award; and 3) the award of civil penalties authorized or imposed in comparable cases. The Sixth Circuit has held the following factors are

12

instructive when determining the reprehensibility of the defendant's conduct.

  a)  Whether the harm was physical or economic.

  b)  whether the conduct showed an indifference or reckless disregard of the health and safety of others.

  c)  Whether the Plaintiff was economically vulnerable.

  d)  Whether the conduct was an isolated incident or a repeated action.

  e)  Whether the harm was the result of intentional malice, trickery, or deceit or mere accident.

See *State Farm* at 419.

   In reviewing these factors, the Court finds the jury had sufficient evidence to find Defendant's conduct reprehensible to support a punitive damage award.  It determined Plaintiff's religion was a determining factor in her failure to get the job.  There was evidence company supervisors then attempted to cover it up by requiring Plaintiff Gibbons make up an excuse for Thomas' non-hire.  Plaintiff Thomas suffered economic loss as result.  Testimony at trial revealed Plaintiff Thomas was told to put in her two weeks notice at her prior job which established that Defendant knew Thomas would be unemployed when they revoked her employment for discriminatory reasons.  All establish a degree of reprehensibility sufficient to support an award of punitive damages.

   This Court has already discussed the disparity in the harm suffered by Plaintiff and the amount of the punitive damages and found the single digit multiplier did not offend the Due Process Clause, considering the relatively small compensatory award and the discriminatory conduct.

Finally, the Court is not aware of any similar criminal penalties that would offer guidance on this factor.  Courts have looked to comparable cases to determine whether the punitive damage award violates due process.  Plaintiff has provided this Court with two comparable cases demonstrating punitive awards, albeit under federal punitive damage claims,  in excess of One Hundred Thousand Dollars which did not violate Due Process.  See *EEOC v. Harbert Yeargin, Inc.,*  266 F.3d 498 (6th Cir. 2001), and *Hall v. Consolidated Freightways,* 337 F.3d 669 (6th Cir. 2003).  Since the jury in this case awarded punitive damages in the amount of Forty Thousand Dollars, the Court finds no violation of Due Process occurred in the award and denies Defendants Motion to Alter or Amend, Renewed Motion for Judgment and Motion for New Trial.

Finally, the Court denies Defendants Motion for New Trial for the Court's denial of Defendants Motion in Limine to exclude evidence about Bair's reason for not hiring other employment candidates.  At trial, Plaintiff offered testimony that Bair failed to hire other employment candidates because one was living with her boyfriend which was deemed, "not Christian"; another was not hired because he was allegedly having an affair; and the third was not hired because his or her name sounded Jewish.  The Court denied Defendant's Motion in Limine to Exclude this testimony, finding the testimony relevant to the issues in the case and not inadmissible under Fed. R. Evid. 403.

Having determined that the jury award of punitive damages under Ohio law was not improper, the Court finds the jury's award of attorney's fees is also proper and denies Defendant's Motion for Judgment on the Award of Attorney's Fees.

### **Gibbons Claims**

14

II.  Plaintiff Gibbons:

A)    The jury found Defendant did not offer a legitimate non-discriminatory reason for Gibbons termination even though the undisputed evidence demonstrated Bair placed Gibbons on a developmental plan and two corrective action plans and final assessments of foster family files for which she was responsible demonstrate there were 52 errors.

B)    The jury erred in finding for Plaintiff Gibbons when Plaintiff failed to demonstrate the ultimate decision maker knew of her protected complaint and failed to establish a causal connection between the protected activity and her ultimate termination.

C)    The jury awarded Ninety Thousand Dollars in punitive damages under Ohio law which requires clear and convincing evidence of actual malice, even though Gibbons offered no evidence the ultimate decision maker in her termination even knew she complained about Bair's refusal to hire Thomas.

D)    The punitive damage award violated Fourteenth Amendment Due Process and was excessive as the evidence showed Bair lost Four Hundred Thousand Dollars in 2003 and had a net gain of approximately Thirty-Eight Thousand Dollars in 2004.

E)    The jury awarded Gibbons Forty Thousand Dollars in front pay for eighteen months when the maximum permissible amount under the Court's findings totaled approximately Fourteen Thousand Dollars.

A)    ***The jury erred in determining that Defendant failed to offer a legitimate non-discriminatory reason for terminating Gibbons employment even though Defendant produced evidence Plaintiff Gibbons failed to certify any families for three months, her reports contained fifty-two errors and she was placed on a developmental plan and three corrective action plans.***

Defendant seeks a new trial based on the allegedly erroneous holding by the jury that

Defendant failed to articulate a legitimate, non-discriminatory reason for its discharge of

Plaintiff Gibbons.  Under the *McDonnell/Burdine* burden shifting analysis in Title VII claims,

once Plaintiff has established a prima facie case of retaliation, Defendant need only offer a

legitimate, non-discriminatory reason for the termination.  Defendant cites to *Board of Trustees*

*v. Sweeney,* 439 U.S. 24, 25 (1978) wherein the United States Supreme Court held, "an

15

employer's burden is satisfied if he simply explains what he has done or produces evidence of legitimate nondiscriminatory reasons."  Again, Defendant contends the jury instruction was correct, but  the jury erroneously held Defendant failed to offer a legitimate non-discriminatory reason for the termination, against the manifest weight of the evidence.  Specifically, Defendant contends its burden is one of production and not persuasion.

Plaintiff contends the jury was free to consider Defendant's proffered explanation of Plaintiff's termination and determine whether it was legitimate or not.  Based on the evidence before it, the jury determined Defendant's explanation was not credible and failed to satisfy its burden under *McDonnell/Burdine*.  This Court disagrees with Plaintiff and finds the jury incorrectly applied the instructions given it.  However, the misapplication was harmless and does not warrant a new trial.

Jury Interrogatory number five stated, " [d]id the Defendant offer some legitimate non-retaliatory reason for disciplining Ms. Gibbons more harshly, and/or terminating Ms. Gibbons? The jury answered "no".  The interrogatory went on to say, "[i]f no, you have found the Defendant liable for Title VII retaliation."  The jury, per the Court's instructions, never answered the question of pretext under the *McDonnell/Burdine* analysis, because it determined Defendant did not offer a legitimate non-discriminatory reason for the discipline/termination of Gibbons. However, that is not the same as saying the jury never reached the question of pretext.  This Court believes the jury clearly did determine Defendant's proffered reasons was pretext.

Again, this Court must determine whether the jury's answers can in anyway be reconciled before it determines a new trial is warranted.  The Court believes, in hindsight, that the insertion of language in the interrogatory and instructions, informing the jury that it was not

16

required to believe the Defendant's proffered reason at that stage of the analysis, would have better served the jury.  As it stands, the Court's instruction, while legally correct, allowed for some confusion on the part of the jury in focusing their attention on the legitimacy of the proffered explanation prematurely, instead of focusing their attention on the offer of an explanation itself.  By proffering evidence of multiple corrective action plans and demonstrating the numerous mistakes Plaintiff made in certifying families, Defendant satisfied its burden under *McDonnell/Burdine* by articulating a non-discriminatory, legitimate reason for the actions taken against Plaintiff.

That being said, the jury was unarguably presented with evidence that Defendant's explanation was pretextual.  The jury heard evidence that Plaintiff's work performance was fine until she complained of the discrimination against Plaintiff Thomas.  They heard testimony that she did, in fact, certify families during a three month period when Defendant alleged she failed to certify families.  There were discrepancies in the corrective action plans given to Plaintiff.  After many days of such testimony and evidence, the jury concluded the proffered legitimate reason for Plaintiff's termination was pretext. The jury ultimately awarded punitive damages against Defendant for its actions against Plaintiff, clearly evidencing a determination on the jury's part that Defendant actions were pretextual and worthy of punishment.  That the jury proceeded to evaluate the credibility of the Defendant's proffered explanation at the articulation stage of *McDonnell/Burdine* analysis does not warrant a new trial.  As the Supreme Court stated in *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577 (1978), " [t]he method suggested in *McDonnell Douglas* for pursuing this inquiry, however, was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in

17

light of common experience as it bears on the critical question of discrimination." "The *McDonnell Douglas* division of intermediate evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to this ultimate question." *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981).

In light of the evidence presented to the jury and its award of punitive damages against Defendant, the Court finds the jury's answer to interrogatory number five can be harmonized with its overall holdings in the case, and therefore, denies Defendant's Motion for New Trial.

B)     ***The jury erred in finding for Plaintiff Gibbons when Plaintiff failed to demonstrate the ultimate decision maker knew of her protected complaint and failed to establish a causal connection between the protected activity and her ultimate termination***.

Defendant contends the jury erred in finding for Plaintiff on her retaliation claim as there was no evidence the ultimate decision maker, Susan Miklos, knew of Gibbons protected activity. However, the jury heard conflicting testimony on who the actual ultimate decision maker was, raising an issue of fact clearly within the jury's purview.  The jurors heard testimony Plaintiff Gibbons' supervisors disciplined her more harshly than similarly situated employees.  Also, the jury had evidence that Susan Miklos was present at a meeting wherein Gibbons complained of the decision not to hire Thomas for discriminatory reasons.  Finally, the jury heard evidence that Susan Miklos decision to terminate was merely a rubber stamp approval of decisions made by direct supervisors of Gibbons who were aware of her protected activity. This evidence provided a sufficient basis for the jury to conclude Plaintiff had satisfied her burden under Title VII.

Also, the jury had evidence of temporal proximity of Plaintiff Gibbons protected activity to her negative reviews and subsequent termination.  When this was coupled with the evidence that the proffered nondiscriminatory reason for her termination was pretextual - i.e. the

previously discussed problems with her certification of families and errors in her reports- the

jury had sufficient evidence to conclude a causal connection between her protected activity and

harsh discipline compared to similarly situated employees and termination.  Therefore,

Defendant's Renewed Motion for Judgment and Motion to Alter or Amend Judgment is denied.

C)    ***The jury erred in awarding Plaintiff Gibbons Punitive Damages when there was no evidence the ultimate decision maker knew of her protected activity when she terminated her employment or acted with actual malice when she made the decision.***

This Court has already determined the jury had sufficient basis for determining the

ultimate decision maker knew of Plaintiff's protected activity when it found for Plaintiff.

Therefore, the Court will not reexamine the issue of ultimate decision maker's knowledge.  As to

the actual malice of the ultimate decision maker, the jury had  evidence of ill will of Plaintiff

Gibbons' supervisors upon Gibbons exercising of her protected rights.  By increasing her

workload, giving her tasks that were unreasonable or impossible to accomplish, and fabricating

mistakes and errors made by Plaintiff, the jury had sufficient basis to conclude ill will by Bair in

order to award punitive damages.  Therefore, Defendant's Renewed Motion for Judgment and

Motion to Alter or Amend or Motion for New Trial and for Remittitur is denied.

D)    ***The punitive damage award violated Fourteenth Amendment Due Process and was excessive as the evidence showed Bair lost Four Hundred Thousand Dollars in 2003 and had a net gain of approximately Thirty-Eight Thousand Dollars in 2004.***

Using the *BMW v. Gore* analysis, the Court finds the jury's award of Ninety Thousand

Dollars did not offend the Due Process Clause of the Fourteenth Amendment.  The jury heard

evidence of deceit in Defendant requiring Plaintiff Gibbons to fabricate an excuse for the non-

hire of Plaintiff Thomas.  There was evidence the proffered reasons for Plaintiff's harsh

treatment and termination were untrue and there was evidence that discrimination based on

19

religion was not an isolated occurrence at Bair.  Finally, the jury heard testimony that Plaintiff

Gibbons filed for bankruptcy prior to her discharge and that Defendant received notice of her

filing.  All were factors from which the jury could find the requisite reprehensibility under *Gore*

to permit an award of punitive damages. The punitive award was Ninety Thousand Dollars, more

than twice the amount of Plaintiff's front pay award.  Again, a multiplier of less than three times

the front pay award does not offend, on its face, the Due Process clause of the Fourteenth

Amendment.  The jury also heard testimony that Bair generates millions in revenue, though it

posted earnings of less than Forty Thousand Dollars in 2004.  Also, the Court finds such an

award does not represent a gross disparity between the front pay and punitive award to warrant

alteration or amendment, considering the jury's determination that Defendant's actions were

sufficiently reprehensible to warrant punishment.

Finally, Defendant points out the Court should look to the Federal punitive damage cap

as a guideline to the fair amount to be awarded here.  Under 42 U.S.C. 1981a, punitive damages

for a company the size of Bair would be capped at Fifty Thousand Dollars.  However, Plaintiff

correctly points out that Ohio punitive damage awards are not capped.  Also, Plaintiff has

provided case law where punitive damages of more than Ninety Thousand Dollars have been

upheld in discrimination cases.  See *Jeffries v. Wal-Mart,* 15 Fed. Appx. 252 (6th Cir. 2001) and

*Hall v. Consolidated Freightways,* 337 F.3d 669 (6th Cir.  2003). Therefore, the Court denies

Defendant's Renewed Motion for Judgment, Motion to Alter or Amend, Motion for New Trial

and/or Remittitur.

As the Court finds the jury's award of punitive damages was proper, the Court

necessarily denies Defendant's Motion for Judgment as a Matter of Law with respect to the

jury's award of attorneys' fees.

E)     ***The jury erred in awarding Gibbons Forty Thousand Dollars in Front Pay when the Court's prior ruling limited an award to Fourteen Thousand Dollars.***

The Court's instruction on front pay stated the following:

If you find for Plaintiff Gibbons, you shall consider an award of front pay.  Front pay includes the amount the Plaintiff would have earned from the date of the verdict until the date I have determined as a matter of law her future pay and benefits should cease-that is, eighteen months from the date of your verdict.  Also, I have determined that you must assume that if Ms. Gibbons were to remain in her present job, she would have receive annual salary increases of three percent... The purpose of front pay is to temporarily compensate the employee while she seeks comparable employment and not to give long-term compensation from the date of the verdict to retirement.  Among the factors to be considered in deciding the amount of front pay are the following: 1) age of the Plaintiff and her reasonable prospects of obtaining comparable employment elsewhere; 2) salary and other tangible benefits, such as bonuses and vacation pay; 3) expenses associated with finding new employment; and 4) the replacement value of fringe benefits until comparable fringe benefits are obtained or for a reasonable length of time.  In determining the amount of front pay, you must deduct the amount of wages and benefits you believe will be received from replacement income during the period of front pay awarded."

Defendant contends the evidence presented at trial does not support an award of front pay because: 1) Plaintiff claims she loves the job she is currently in, and offered no evidence she is seeking comparable employment; 2) Plaintiff offered no evidence other than her current salary by which a jury could reasonably calculate front pay damages; 3) the jury miscalculated the amount of front pay, since Plaintiff's salary at Bair was no more than $40,000.  Plaintiff Gibbons' current salary is $33,000.  Using Plaintiff's figures, her salary at Bair would have been $41,890.44 in 2006 and $43,209.86 in 2007.  Factoring in a 3% raise to her current position, her salary would be $33,900.00 for 2007, and subtracting her current salary from her projected Bair salary, Defendant argues Plaintiff should only have been awarded a front pay amount of $13,662.81.

21

The determination of the "propriety" of an award of front pay is for the court.  The determination of the amount of front pay award is a question for the jury.  See *Roush v. KFC National Management Co.,* 10 F.3d 392, 398 (6th Cir. 1993).  The Court determined that reinstatement was not practicable, as Plaintiff was already employed elsewhere.

The parties were unable to stipulate to the amount of salary, bonuses and benefits Plaintiff earned while at Bair and also the parties could not agree on what her future earnings, bonuses, promotions and benefits would have been had she remained.  Considering the factors the jury could have applied ,including bonuses, vacation pay, fringe benefits, and likelihood of promotion, this Court cannot say the jury did not reach its conclusion reasonably, and the Court cannot conclude there was a complete absence of proof to prohibit a reasonable jury from arriving at the $40,000 figure.  Therefore, the Court denies Plaintiff's Renewed Motion for Judgment as a Matter of Law and denies its Motion to Alter/Amend Judgment.

Therefore, the Court denies Defendant, The Bair Foundation, Inc.'s Consolidated Post-Trial Motions on all claims.

IT IS SO ORDERED.

<u>February 20, 2007</u>　　　　　　　　<u>　s/Christopher A. Boyko　　　</u>
Date　　　　　　　　　　　　　　　CHRISTOPHER A. BOYKO
　　　　　　　　　　　　　　　　　United States District Judge

This Opinion is not for Publication.